**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**ED COX,**
**Petitioner,**

**v.** **Case No. 4:06cv59/SPM/MD**

**JAMES R. MCDONOUGH,**
**Respondent.**

---

## REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1). Respondent has filed a response (doc. 13) to which petitioner has replied (doc. 17). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

**BACKGROUND AND PROCEDURAL HISTORY[1]**

**On July 29, 1999 the state filed a two count information against petitioner in the Circuit Court of Gadsden County, Florida, case no. 99-514, alleging (1) sale of cocaine on July 6, 1999 and (2) possession with intent to sell or deliver cocaine on July 6, 1999 (doc. 13, ex. B, p. 5).[2] On February 23, 2000 the state filed a two count information against petitioner in the same court, case no. 99-513 alleging (1) sale of cocaine on July 6, 1999 and (2) possession with intent to sell or deliver cocaine on July 6, 1999 (doc. 13, ex. A p. 13). Defendant pleaded not guilty, and the two cases were tried together. The testimony presented at trial disclosed that Lt. Joyner, a member of the Gadsden County Sheriff's Narcotics Unit, following standard procedure, sent a confidential informant (CI), known to him to be reliable, to purchase cocaine from the petitioner at The Shack. The CI was fitted with both an audio recorder and a video recorder. The CI purchased what turned out to be crack cocaine from the petitioner and immediately returned to Lt. Joyner, who was waiting nearby. The first buy took place on July 6, 1999 at around 5:00 p.m. After doing appropriate searches of the CI and her vehicle, the CI was sent back to buy more cocaine from petitioner at The Shack. She purchased additional crack cocaine and returned it to Lt. Joyner at around 6:00 p.m. the same day (pp. 12-38).**

**The video recording of the two transactions was shown to the jury. The CI's testimony was consistent with that of Lt. Joyner (ex. C, pp. 38-50). Deputy Sheriff Jim Corder testified that he had known petitioner for three years and identified him as the person in the videotape (ex. C, pp. 50-54). Petitioner testified that he lived in what had once been a "juke joint" known as The Shack. He admitted that he appeared in the video recording, but denied that it showed a drug sale or that he sold cocaine to the CI. He also admitted that he had known Deputy Jim Corder for**

---

**[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984). Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the court's analysis.**

**[2]Hereafter all references to exhibits will be to those provided at doc. 13, unless otherwise noted.**

**some time (ex. C, pp. 56-63).**

**The jury was instructed on the elements of both charged crimes in each case, and petitioner was found guilty of both counts in case no. 99-513 and of both counts in case no. 99-514 (ex. A, pp. 14-15; ex. B, pp. 9-10). Petitioner was sentenced to two fifteen year concurrent terms as an habitual felony offender. His conviction and sentences were upheld on appeal, and his various motions for post-conviction relief and motions attacking an illegal sentence were denied, and the orders of denial were affirmed on appeal. Those motions and orders will be discussed below where relevant. Petitioner now seeks federal habeas relief. Respondent concedes that the instant petition is timely (doc. 13, p. 6). Respondent also concedes that all but the sixth ground for relief were properly exhausted (doc. 13, pp. 8, 24).**

## STANDARD OF REVIEW

**Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:**

> **(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–**
>
> > **(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
> >
> > **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C.A. § 2254 (2002).**

**The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The**

**appropriate test was described by Justice O'Connor as follows:**

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

**120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).**

**Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme**

**Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."** ***Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.**

**If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."** ***Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).**

**Section 2254(d)(1) requires more than mere error, and more even than clear**

**error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").**

**Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).**

**Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).**

**When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §**

**2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).**

**PETITIONER'S GROUNDS FOR RELIEF**

**All six of petitioner's grounds for relief are based on his claim that he was denied his right to the effective assistance of counsel.**

**Clearly Established Federal Law**

**In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).**

**"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:**

> **We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.**

***Chandler*** **at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.** ***Chandler*** **at 1314 n.15.**

**In order to meet the prejudice prong of the** ***Strickland*** **standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."** ***Id.*****, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.** ***Smith v. White*****, 815 F.2d 1401, 1406-07 (11th Cir.),** ***cert. denied*****, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying** ***Strickland*** **the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.** ***Strickland*****, 466 U.S. at 697, 104 S.Ct. at 2069.**

**Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.** ***Strickland*****, 466 U.S. at 698, 104 S.Ct. at 2070;** ***Collier v. Turpin*****, 177 F.3d 1184, 1197 (11th Cir. 1999).**

**1. <u>Failure to move to suppress the videotape.</u>**

**Petitioner first contends that his attorney should have moved to suppress the videotape introduced into evidence during trial. He says that the probable cause affidavits (ex, A, p. 1,, ex B, p.1) said that the Sheriff's Narcotics Unit, not a CI, made the purchases, that this was untrue, and that this misstatement led to an unlawful search. He further contends that the search warrant was issued some ten days after the July 6 transactions, that the affidavit in support of the search warrant was untruthful concerning who made the purchase, and that the information was stale. For these reasons he contends that the warrant should not have been issued, and the videotape should not have been allowed into evidence.**

**Federal Review of State Court Decision.**

**Petitioner presented this claim to the state court in his first motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (ex. L, pp. 7-10). The Rule 3.850 court denied relief without a hearing, holding that the record conclusively rebutted petitioner's claim because the trial testimony was that the CI was employed by the Narcotics Unit, and the subsequent affidavit in support of the search warrant mentioned the CI (ex. M, pp. 1-2).**

**The state court did not mention *Strickland, supra*, or the standard applicable to ineffective assistance claims. It held simply that the petitioner's claim was factually baseless on the points petitioner raised. The more fundamental reason why petitioner's claim must fail is that the videotape was not the product of a search. Petitioner misunderstands the mechanism of suppression. The basis for a suppression hearing is that law enforcement seized some item of evidence unlawfully. If an accused can show that the seizure was unlawful, the illegally seized item will be suppressed, meaning it will not be allowed to be presented as evidence. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner's argument is misplaced. He attacks probable cause and search warrant affidavits, claiming that they are relevant to the videotape, but the affidavits and warrants have no connection whatsoever to the videotape.**

**Lt. Joyner provided the video recording equipment to the CI; the CI used it to record the drug transaction with the petitioner; Lt. Joyner retrieved the tape from the video recorder, and held it until it was introduced at trial. It was not seized from anybody. It belonged to the Narcotics Unit. It was part of their equipment used in filming drug dealers. Therefore, no matter what the affidavits may or may not have said, the search warrant did not lead to the discovery and seizure of the videotape. Moreover, the items found at petitioner's residence during execution of the search warrant were (1) $260 in currency, (2) a VCR, and (3) a razor blade with cocaine residue. However, none of those items were offered in evidence or used at trial. Therefore, even if the search was unlawful, a question this court need not address, it is certain that a motion to suppress the videotape on the grounds petitioner proposes would not have been successful and would not have altered the outcome**

**of the trial. The tape could not be suppressed because it was not seized, and the items found at petitioner's home, although seized, were not used. Consequently, the state court's denial of relief on this claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*; *see, e.g., Brownlee v. Haley*, 306 F.3d 1043, 1066-67 (11th Cir. 2002) (holding that counsel was not ineffective for failing to raise non-meritorious issue); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (finding no ineffective assistance of counsel for failing to preserve or argue meritless issue). Petitioner is not entitled to federal habeas relief, and the writ should not issue.**

**2. Failure to challenge police misconduct concerning the videotape.**

**Petitioner next argues that his attorney should have elicited testimony concerning police misconduct. The claimed misconduct seems to be the statements in the probable cause affidavits that the Narcotics Unit, not a CI, purchased the drugs, and that Lt. Joyner should have been cross-examined on this point. Petitioner also argues that counsel should have elicited testimony that the videotape did not show a drug transaction.**

**Federal Review of State Court Decision**

**Petitioner presented this claim to the state court in his first motion for post-conviction relief (ex. L, pp. 7). The Rule 3.850 court denied relief without a hearing, referring to its decision on the first ground as to petitioner's allegation of police misconduct. The court further found that defense counsel argued that the video did not show a drug transaction, and that in any event the question of whether the video showed a drug transaction was a question for the jury (ex. M, p. 2).**

**As with the first ground, the state court did not specifically mention *Strickland*, although it concluded that petitioner failed to show "any deficient act on counsel's part." (*Id.*). This conclusion was not an unreasonable application of *Strickland*'s performance prong. Whether the drugs were purchased by a CI or by the Narcotics Unit was irrelevant for purposes of challenging the search warrant or the use of the videotape. Further, the statement that the drug buy was made by a CI is not inconsistent with the statement that the buy was made by the Narcotics Unit.**

Therefore, this provided no basis for impeachment of the state's witnesses.

With regard to petitioner's complaint that counsel failed to elicit testimony that the videotape did not show a drug transaction, the trial transcript establishes that counsel did elicit such testimony - from petitioner (ex. C, p. 58). He also argued in closing that the videotape did not show a drug transaction.[3] Petitioner fails to understand that the question whether the videotape showed a drug transaction was for the jury to decide. The jury decided that it did after viewing the tape and hearing the witnesses' testimony. Defense counsel did all he could in this regard, and the state court reasonably rejected petitioner's contention that counsel's performance was deficient. Petitioner is not entitled to federal habeas relief on this ground.

3. Failure to move for dismissal of one count based on double jeopardy.

Next petitioner contends that he was subjected to double jeopardy because he was prosecuted for two crimes (two counts of sale of a controlled substance) arising out of the same transaction, and that trial counsel was ineffective for failing to move for dismissal of one count. Petitioner presented this claim to the state court in his first 3.850 motion (ex. L, p. 8).

Federal Review of State Court Decision

The Rule 3.850 court denied relief, finding that the sales of cocaine involved in case numbers 99-513 and 99-514 both arose out of separate instances. In case number 99-513, petitioner sold $20 worth of crack cocaine to the CI at 5:02 p.m. In case number 99-514, petitioner sold another $20 worth of crack cocaine to the CI at 5:55 p.m. Both sales involved separate quantities of crack cocaine and separate transactions, thus setting the grounds for two separate cases (ex. M, pp. 2-3). Because there were two criminal acts, there could be no double jeopardy, and thus no basis to move for dismissal.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S.Ct. 1805, 1812, 80

[3] Petitioner fails to explain how counsel could have elicited such testimony from the state's witnesses. The purpose of cross-examination is to impeach the credibility of the witness, not argue with him or her about what the videotape did or did not show.

**L.Ed.2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices*, 466 U.S. at 307-08, 104 S.Ct. at 1812 (citation and footnote omitted). In the contexts of both multiple punishment and successive prosecution, the double jeopardy bar applies if the two offenses for which the defendant is punished or tried cannot survive the "same-elements" or "*Blockburger*" test. *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856. Although this court will decide under federal law whether a double jeopardy violation has occurred, it must accept Florida courts' interpretation of that state's own statutes. *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir. 1988) (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.ct. 673, 679, 74 L.Ed.2d 535 (1983)).**

**The state court's findings are presumed correct, and are amply supported by the record. Petitioner engaged in two separate drug transactions, and therefore committed two criminal acts. The mere fact that the drug sales occurred within one hour of each other and involved the same type of controlled substance - cocaine, provides no basis for a double jeopardy claim. Thus, the state court reasonably rejected petitioner's claim that counsel was deficient in failing to move for dismissal on this basis.**

**To the extent petitioner is challenging the fact that he was charged and convicted on two counts arising out each transaction (for a total of four counts), his claim still must fail. Under the *Blockburger* test, each offense - sale of cocaine and possession with intent to sell cocaine - must contain an element not contained in the other. The Supreme Court of Florida addressed this exact question in *State v. McCloud*, 577 So.2d 939 (Fla. 1991) and held that the first charge - sale - is not**

**contained in the second, and that the second charge - possession - is not contained in the first, reasoning that a person can sell a drug without possessing it. The court noted that the Florida Legislature had codified the *Blockburger* test at Fla. Stat. § 775.021(4) which provides, in relevant part:**

> **Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses . . . shall be sentenced separately for each criminal offense. . . . For purposes of this subsection, *offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.***

**(Emphasis added). The court further reasoned that it made no difference that Mr. McCloud was convicted of selling and possessing with intent to sell the same quantum of drugs - exactly as petitioner did here - because the statute makes possession and sale separate offenses without regard to whether the drug was sold without being possessed. That is, a person can possess a drug with the intent to sell it, and a person can sell a drug without ever possessing it, so under *Blockburger* there is no double jeopardy. Since this court must defer to the state court on the interpretation of its own law, *Tarpley v. Dugger, supra*, there was no valid claim of double jeopardy that petitioner's counsel could have raised. And since there was no colorable claim to raise, counsel cannot be faulted for failing to raise it. Petitioner is not entitled to federal habeas relief, and the writ should not issue.**

**4. Failure to object to improper habitualization.**

**Next petitioner contends that counsel was ineffective for failing to object to his habitualization on the alleged double jeopardy convictions ("two sale offenses for the same quantum of substance") (doc. 1, Continuation Page 6). The Rule 3.850 court held that the claim was procedurally barred because the improper habitualization issue was unsuccessfully raised on direct appeal and in a Rule 3.800 motion to correct illegal sentence (ex. M, p. 3).**

**This court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001)**

**("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d at576, 579 (11th Cir. 1995).**

**In the instant case, it is arguable that the state court misapplied the procedural bar, because although petitioner previously challenged his habitualization, neither his direct appeal nor any of his Rule 3.800 motions raised an ineffective assistance claim based on counsel's failure to object. Nonetheless, even affording petitioner *de novo* review, this IAC claim must fail.**

**The record conclusively demonstrates that petitioner's habitual offender sentence was imposed based on petitioner's prior convictions for possession of cocaine (in Gadsden County case no. 92-633; date of conviction 10/26/92) and sale of a controlled substance (in Gadsden County case no. 95-255; date of conviction 5/16/95), not the convictions in case nos. 99-513 and 99-514. (Ex. C, pp. 97-105). Thus, had counsel objected to habitualization on the double jeopardy grounds petitioner proffers, the objection would have been overruled. To the extent petitioner claims counsel was deficient in failing to make a double jeopardy objection at sentencing to petitioner receiving separate punishments for the two drug sales, his claim must fail because such objection would have been overruled for the same reasons discussed in Ground 3, *supra*. There was no double jeopardy violation in this case. Therefore, there was no double jeopardy-based objection counsel could have made to petitioner's habitualization. This ground does not warrant federal habeas relief.**

**5. Failure to suppress search warrant.**

**Petitoiner faults counsel for failing to "suppress search warrant." (Doc. 1). Although he asserts he raised this claim in a Rule 3.850 motion, the state court record does not indicate that he did. Regardless, even affording petitioner all benefit of the doubt and reviewing the claim *de novo*, it is does not warrant federal habeas relief.**

**This claim is no different in substance from the first. As noted, *if* the search warrant was subject to constitutional challenge, something this court need not decide, petitioner's only relief would be the suppression of any evidence found *in the execution of the search warrant*. Since no such evidence was used at trial, petitioner cannot show prejudice. If, for the sake of discussion, the warrant was unlawful, and if counsel had successfully moved to suppress the items found at petitioner's home when the warrant was executed, the result would be the same. Petitioner would be convicted on other evidence - on the exact same evidence adduced at trial and upon which he was in fact convicted. Petitioner cannot show the existence of a reasonable probability that the result of the trial would have been different had counsel moved to suppress the evidence seized upon execution of the search warrant. Therefore, his ineffective assistance claim fails, and he is not entitled to federal habeas relief.**

**6. <u>Failure to investigate and interview alibi witnesses.</u>**

**Finally, petitioner faults his attorney's investigation. He says that the police that came to his house to search on July 16, 1999 would have been alibi witnesses. Petitioner also argues that the CI should not have been allowed to testify because she was a convicted felon, and that because there was no drug transaction apparent on the videotape, she should not have been allowed to testify that there was such a transaction. He also argues that counsel should have investigated independent witnesses, but does not say who those witnesses are, or what they would say.**

**Respondent contends that this issue was never presented to the state court, but concedes that his records may be incomplete. Petitioner says it was presented in his second 3.850 motion, but that motion is not in the record. Regardless, petitioner's claim is without merit. First, petitioner says that the officers who came to search his home on July 16, should have been called as alibi witnesses,**

**presumably because they did not find any drugs. But as has been stated before, the fact that the home was searched, and a few items were found, and no drugs, was irrelevant to the question of what happened on July 6, 1999. These officers could not have offered any relevant testimony, much less alibi testimony.**

**Second, petitioner again attacks the credibility of the CI. However, the CI admitted on the stand that she was a convicted felon and had smoked crack cocaine, and that she was paid by the police to do undercover buys (ex. C, pp. 47-48). That did not disqualify her from testifying. Her prior record, her use of drugs, and her operating as a paid informant were just factors for the jury to consider in assessing her credibility. Defense counsel cross-examined her on these facts. Counsel could not have prevented her from testifying.**

**Lastly, petitioner says that the proof of all his allegations of ineffective assistance of counsel is clear in the record when his attorney referred to him as being "stupid." From this he concludes that his attorney allowed him to be convicted and habitualized because he thought that petitioner was stupid.**

**The context shows otherwise. At sentencing, the state argued for habitualization. Counsel argued that petitioner should not be habitualized. He pointed out that the state had offered a plea deal of time served, which would have been about 90 days, but petitioner insisted on going to trial. Counsel explained to the court that he had tried to make petitioner understand that anything having to do with the search warrant was irrelevant, but that petitioner had failed or refused to understand and wanted to go to trial. Counsel expressed his frustration, indicating that petitioner had complained to the Bar, to counsel, and to "everybody" that counsel was not challenging the search warrant, but that he had repeatedly told petitioner that the search warrant had nothing to do with the case. Petitioner was adamant, and so went to trial.**

**Counsel expressed his sentiments thusly: "I believe that by enhancing this sentence, what we're doing is we're sentencing him for being stupid." (Ex. C, p. 102). That was an unfortunate choice of words, but counsel clearly was trying to show the court that petitioner did not or could not understand that the search issue was irrelevant, that when petitioner chose to go to trial in the face of a very favorable plea**

**offer, his choice was not a wise one, and that he should not be severely punished for making an unwise choice. The court did not agree, and petitioner was habitualized. From petitioner's standpoint it is indeed unfortunate that he could have pleaded to a 90-day sentence but received fifteen years instead, but that was his clear choice. He has never claimed that he was not offered the 90 days. He just steadfastly maintains that the search warrant should have been attacked.**

**Whether petitioner will ever understand that his position concerning the search warrant is incorrect is unknown, but the simple truth is that petitioner was convicted based on what happened on July 6, 1999. He was not convicted based on anything that happened on July 16, 1999 when the search warrant was executed. For that reason the legality or illegality of the search warrant was irrelevant at the time of trial. A successful attack on the search warrant would have changed nothing, and his counsel was not ineffective in referring to petitioner, out of frustration, as stupid. Petitioner is not entitled to federal habeas relief, and the writ should not issue.**

**Accordingly, it is respectfully RECOMMENDED that the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Ed Cox* in the Circuit Court of Gadsden County, Florida, case nos. 99-513 and 99-514, be DENIED, and that the clerk be directed to close the file.**

**At Pensacola, Florida, this 4th day of September, 2007.**

/s/ Miles Davis

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**